UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARIA G. ZAVALA,                )
                                )
           Plaintiff,           )   Case No. 1:05-cv-483
                                )
v.                              )   Honorable Robert Holmes Bell
                                )
COMMISSIONER OF                 )
SOCIAL SECURITY,                )
                                )   **REPORT AND RECOMMENDATION**
           Defendant.           )
_____)

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Plaintiff filed her SSI application on September 6, 2002 (A.R. 149-52), and her DIB application on October 1, 2002 (A.R. 58-60), claiming a November 22, 2000 onset of disability.[1]  Plaintiff's claims were denied on initial review.  (A.R. 22, 153).  On December 9, 2004, plaintiff received a hearing before an administrative law judge (ALJ) at which plaintiff was represented by counsel.  (A.R. 306-28).  On March 10, 2005, the ALJ issued a decision finding that plaintiff was not disabled.  (A.R.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335;  *see Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir. 1997); *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995); *see also Romero v. Barnhart*, 135 F. App'x 172, 174 (10th Cir. 2005); *Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  Therefore, the question before the Commissioner on plaintiff's SSI claim was whether plaintiff was disabled in or after September 2002, not plaintiff's alleged onset date of November 22, 2000.

13-21). The Appeals Council denied review on May 24, 2005 (A.R. 3-5), and the ALJ's decision became the Commissioner's final decision. On July 15, 2005, plaintiff filed her complaint in this court seeking review of the Commissioner's decision denying her DIB and SSI claims. Plaintiff's brief presents the following statement of errors:

1. The ALJ violated the "treating physician" rule by adopting the limitations posited by a mere records reviewer instead of the limitations imposed by Plaintiff's treating orthopedic surgeon.

2. The ALJ erroneously found that there were "significant" numbers of jobs available to Plaintiff, when in fact the evidence supported only 3000 sit-stand option jobs across the State of Michigan for one unable to speak English.

(Plf. Brief at 2, docket # 8). Upon review, I find that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision, and recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's

review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ – would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act on November 22, 2000, her asserted onset of disability, and continued to meet them through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since

her alleged onset of disability. The ALJ found that plaintiff's stenosis in the lumbar spine constituted a severe impairment. The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible. The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> [T]o lift and carry 20 pounds occasionally with 10 pounds frequently, sit six hours out of an eight-hour workday, and stand or walk two hours out of an eight-hour workday. However, she requires the option to sit or stand at will. She can never climb ladders, ropes, or scaffolding, and is limited to occasionally climbing of ramps or stairs, balancing, twisting, crouching, kneeling, or crawling.

(A.R. 20). The ALJ found that plaintiff could not perform her past relevant work. Plaintiff was forty-four years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual. Plaintiff has a limited education. The ALJ found that plaintiff did not have transferrable work skills from past relevant work "and/or" that the transferability of work skills was not an issue in this case. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with her RFC, education, and work experience, the VE testified that there were approximately 21,000 jobs within the State of Michigan that plaintiff was capable of performing. (A.R. 326-27). The ALJ held that this constituted a significant number of jobs. Using Rule 201.23 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 13-21).

**1.**

Plaintiff's treating physician, Yousif Hamati, M.D., believed that plaintiff was <u>not</u> disabled. He believed that plaintiff was capable of performing a range of sedentary work, and that

she was capable of returning to her previous employment with appropriate restrictions. (A.R. 289, 291, 293). Plaintiff's brief generally ignores these opinions expressed by Dr. Hamati. Instead, plaintiff argues that the ALJ failed to give adequate deference to Dr. Hamati's opinion because the ALJ's RFC determination failed to include sufficient postural restrictions regarding bending, stooping, or twisting. (*Id.* at 10). RFC is the most, not the least, the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). Residual functional capacity is a determination made by the ALJ based upon all the evidence within the record. *Walters*, 127 F.3d at 530; 20 C.F.R. §§ 404.1527(e), 416.927(e). The medical opinions and diagnosis of treating physicians are not entitled to great weight where they are conclusory, but are entitled to such weight where supported by detailed objective criteria and documentation. *See Jones v. Commissioner*, 336 F.3d at 477; *Buxton v. Halter*, 246 F.3d at 773 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The medical records plaintiff submitted in support of her disability claim were not voluminous given the time span between her claimed onset of disability of November 22, 2000 and the ALJ's March 10, 2005 decision finding that she was not disabled. Dr. Hamati began treating plaintiff in December 2001 and last provided treatment on October 29, 2002. In June of 2002 Dr. Hamati indicated that plaintiff was not a candidate for surgical intervention. (A.R. 294). On October 26, 2002, Dr. Hamati stated that plaintiff was "neurologically intact." (*Id.*). He indicated that plaintiff had degenerative arthritis and significant changes at the L4/5 level and a small disc at L5/S1. (*Id.*).

Dr. Hamati's progress notes dated October 29, 2002, stated that plaintiff could return to her previous employment with restrictions:

> Maria Zavala came today for a follow-up visit. I shared with her the new MRI which was done on 10/2/02. This showed a bulging disc at the L4/L5 level with mild stenosis. Obviously she wanted to stay out of work all this time. Personally, I feel this is a problem. She is using a cane to walk and I am not sure she can do any kind of heavy lifting, bending stooping or twisting. She wants to stay off work and I feel she should go back to very limited duty; lifting no more than 20 pounds, sit/stand option. No bending or stooping.

(A.R. 293). Plaintiff failed to appear for any subsequent appointments with Dr. Hamati.[2]

On April 3, 2003, John R. Bartone, M.D., of Michigan's Disability Determination Services contacted Dr. Hamati regarding plaintiff's status. Dr. Bartone summarized their conversation as follows:

> LOV. [Last Office Visit] 10/29/02. Pt. has failed to keep 2 app[ointments]. Dr. Hamati plans to discont[inue] her from his care. Each time she is seen she limps around and cries despite [the] fact that her back condition is considered mild & doesn't require surg. Use of cane is questionable - not prescribed. She gives [the] impression that she is worse than she is.
>
> [He] can't be too specific about her limitations, but estimates that she can lift #10. [He] doesn't know how long she can stand or sit. [He] advised [a] sit/stand option [with] no specific time requirement.
>
> Dr. doubts she is totally disabled. Could do sit (sed[entary]) type job.

(A.R. 289).

On May 6, 2003, Dr. Hamati wrote the following letter to Michigan's Family Independence Agency:

> To Whom it May Concern:
>
> I was asked to prepare a letter concerning Ms. Maria Zavala's limitations. I have said before that she should not lift, bend, twist, and should avoid lifting more than 20 pounds. She had an MRI of the lumbar spine which showed mild L4-L5 central spinal stenosis secondary to bulging disc. She could be symptomatic, but I am not sure what that means as far as her ability to work. She had an MRI also in 2001 which showed degenerative changes and

---

[2]Plaintiff's workers' compensation redemption order for $55,000 against E-Coaters of West Michigan, Inc. is dated November 12, 2002. (A.R. 74).

>   limited tear of the annulus 4-5, 5-S1.  As far as Social Security, they may want to send her for a second opinion because I cannot completely disable her.

(A.R. 291).

The ALJ opinion discussed Dr. Hamati's records, the other medical records submitted in support of plaintiff's disability claims, plaintiff's hearing testimony, and the reports of state-agency medical consultants and non-examining medical sources.[3]  The ALJ noted the absence of frequent or intense treatment for plaintiff's impairments, including the absence of any documented need for medical treatment for plaintiff's lower back condition after December 31, 2003. (A.R. 16-17).  On the basis of the entire record, the ALJ made the following RFC determination:

>   [T]he undersigned finds that the claimant retains the residual functional capacity to lift and carry 20 pounds occasionally with 10 pounds frequently, sit six hours out of an eight-hour workday, and stand or walk two hours out of an eight-hour workday.  However, she requires the option to sit or stand at will.  She can never climb ladders, ropes, or scaffolding, and is limited to occasional climbing of ramps or stairs, balancing, twisting, crouching, kneeling or crawling.

(A.R. 17-18).  The following excerpt from the ALJ's opinion shows that the ALJ found Dr. Hamati's October 29, 2002 progress note restrictions (no bending or stooping), and his statement in a letter roughly seven months later (plaintiff should not bend or twist) as unduly restrictive and not supported by the record as a whole.

>   Further consideration has been give to the opinion of Dr. Hamati, who has opined that the claimant can perform no bending or twisting, and no lifting of more than 20 pounds.  He indicated that he could not completely disable the claimant (Exhibit 7F).  Social Security Ruling 96-2 provides that if a treating source's opinion is well supported and is consistent with the other substantial evidence of record, it is given controlling weight.  Therefore, as the record indicates, the opinion of Dr. Hamati is accorded controlling weight to the extent that it is compatible with her established residual functional capacity.  The undersigned notes

---

[3] The ALJ's RFC determination was more restrictive than the residual functional capacity assessment completed by Dr. Bartone. (A.R. 253).

>   that the April 3, 2003 opinion of Dr. Hamati is given little consideration, as he indicated that he could not be too specific with regard to limitations (Exhibit 6F).

(A.R. 18). The Sixth Circuit's decision in *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir. 2004) held that 20 C.F.R. § 404.1527(d)(2) created a procedural requirement that an ALJ must give "good reasons" for the weight given to a treating source's medical opinion.[4]  378 F.3d at 545-47. The above-quoted paragraph, when read in context of the entire opinion, constitutes a sufficient statement of the ALJ's good reasons for rejecting the three proposed postural limitations. They were rejected because the objective evidence showed that plaintiff had a relatively mild lower back impairment (A.R. 16, 17), there were no records of a frequent or intense treatment or change in treatment regimen (A.R. 17), and there was a notable lack of evidence documenting any ongoing need for medical treatment of plaintiff's back problems. (*Id.*).[5] These constitute good reasons for rejecting the postural limitations. I find that plaintiff's argument does not provide any basis for disturbing the Commissioner's decision.

---

[4] In *Wilson*, the Court of Appeals declined to reach the issue of whether a *de minimis* violation of this rule could constitute harmless error. 378 F.3d at 547. In subsequent cases, the Sixth Circuit has applied a harmless error analysis and extended the "good reasons" rule announced in *Wilson* to SSI claims. *See Sharp v. Barnhart*, 152 F. App'x 503, 507-08 (6th Cir. 2005); *Daniels v. Commissioner*, 152 F. App'x 485, 491 (6th Cir. 2005).

[5] On December 9, 2004, at the outset of the hearing, the ALJ asked plaintiff's attorney if there were any other documents that he would like to submit as exhibits in support of plaintiff's disability claims. The only document plaintiff's counsel added to the record was the opinion issued in connection with plaintiff's workers' compensation claim. (A.R. 309).

**2.**

Plaintiff's remaining argument is that the jobs identified by the VE do not constitute a significant number of jobs. (Plaintiff's Brief at 12-13). In response to an initial hypothetical question from the ALJ regarding a person of plaintiff's age, education, work experience and RFC, the VE identified the following 29,500 jobs that such a person would be capable of performing within the State of Michigan:

> We have assembly of 5,000; inspection 6,000; sorting 6,000; machine operators 4,000; security monitors 500; attendants 3,000; [and] general clerks 5,000.

(A.R. 326). When the ALJ's second hypothetical added a language barrier, the VE testified that only the attendant and general clerk jobs (8000 jobs) would be eliminated. (A.R. 327).[6] This left a total of 21,500 jobs. The ALJ did not include the 500 security monitor positions when he held that the 21,000 jobs identified by the VE constituted a significant number of jobs. (A.R. 19, 21). This easily constitutes a significant number of jobs. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 is a significant number and collecting cases where as few as 174 positions were found to be a significant number); *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988) (1,350 is a significant number); *see also Simons v. Barnhart*, 114 F. App'x 727, 734 (6th Cir. 2004); *Tidwell v. Barnhart*, 88 F. App'x 82, 85-86 (6th Cir. 2004). I find that the Commissioner's decision in this regard is supported by substantial evidence.

---

[6] Plaintiff suggests that the VE's testimony in response to the second hypothetical eliminated all but the 3000 attendant jobs. (Plaintiff's Brief at 6). Although I do not agree with plaintiff's interpretation of the VE's testimony, even if plaintiff is correct, the 3000 jobs identified by the VE would constitute a significant number of jobs.

**Recommended Disposition**

    For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: January 30, 2006  /s/  Joseph G. Scoville
               United States Magistrate Judge


**NOTICE TO PARTIES**

    Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).